IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL NO. 1:13-CR-16** |
| : | |
| v. : | **(Judge Conner)** |
| : | |
| **BRYAN KELLER HORTON, JR. (1),** : | |
| : | |
| **Defendant** : | |

## MEMORANDUM

Defendant Bryan Keller Horton, Jr., moves the court, through appointed counsel, for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  Horton asks the court to reduce his sentence to time served based on his medical condition and his concern regarding potential spread of the COVID-19 virus[1] at the Elkton Federal Correctional Institution ("FCI Elkton") where he is currently incarcerated.  The government opposes compassionate release.  For the reasons that follow, we will deny Horton's motion.

**I.      Factual Background & Procedural History**

On January 30, 2013, a grand jury returned a four-count indictment charging Horton with three counts of possession with intent to distribute cocaine base and one count of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1).  (Doc. 1).  The indictment also charged Horton with aiding and abetting

---

[1] The COVID-19 virus is also known as "severe acute respiratory syndrome coronavirus 2" and "SARS-CoV-2." *Naming the coronavirus disease (COVID-19) and the virus that causes it,* WORLD HEALTH ORG., https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it.  We refer to the virus herein as "the COVID-19 virus" and to the disease it causes as "COVID-19."

each offense, in violation of 18 U.S.C. § 2. (Id.) In August 2013, Horton pled guilty to Count 1 of the indictment, and specifically the charge of trafficking cocaine base, in violation of 21 U.S.C. § 841(a)(1). (Docs. 28, 32).

The probation office prepared a presentence report which detailed the offense conduct and Horton's extensive criminal history. As outlined in the presentence report, Horton has a lengthy criminal record, including multiple convictions for drug trafficking. Because Horton is a career offender, the presentence report calculated a Guidelines imprisonment range of 151 to 188 months. (PSR ¶ 51). At sentencing, the court weighed each of the factors required by 18 U.S.C. § 3553(a) before varying downward to sentence Horton to 140 months imprisonment on Count 1. (See Docs. 40, 48). The Third Circuit Court of Appeals affirmed Horton's conviction and sentence. See United States v. Horton, 581 F. App'x 154 (3d Cir. 2014) (nonprecedential). Horton is currently incarcerated at FCI Elkton with a projected release date of July 18, 2022. See *Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search for BOP Register Number "70982-067") (last visited July 30, 2020).

In May 2020, Horton wrote the warden at FCI Elkton and asked the warden to consider seeking compassionate release on his behalf. (See Doc. 65 at 9; see also Doc. 55-2). The warden denied that request on May 22. (Doc. 55-2). Horton filed a *pro se* motion for compassionate release on June 1, 2020. (Doc. 53). That same day, we appointed the Federal Public Defender to determine whether Horton may be eligible for such relief and, if so, to file any appropriate motion or briefing on his behalf. (Doc. 54). Appointed counsel filed a brief in support of Horton's motion for

compassionate release on June 29, (Doc. 55), and we promptly implemented an expedited briefing schedule, (Doc. 56). Horton's motion is now fully briefed and ripe for review. (Docs. 55, 65, 66).

### III.   Discussion

Horton asks the court to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act of 2018, § 603(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239. Section 3582(c)(1)(A)(i) allows the sentencing court to reduce a term of imprisonment if the court finds, after consideration of the Section 3553(a) factors, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

Both the defendant and the Director of the Bureau of Prisons ("BOP") can move for compassionate release under Section 3582(c)(1)(A). See id. § 3582(c)(1)(A). But before a defendant can move the court directly, he must either "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or wait for 30 days to lapse from the warden's receipt of a request that the BOP file such a motion. Id. According to the government, the warden received Horton's request on May 13, 2020. (Doc. 65 at 9). The warden denied that request on May 22. (See Doc. 55-2). The government does not contest that Horton has

satisfied the statutory exhaustion requirements.[2] We therefore turn to the merits of Horton's motion.

A.   **Extraordinary and Compelling Reasons**

Horton contends that his medical condition and resulting vulnerability to serious complications from COVID-19 establish extraordinary and compelling reasons to grant compassionate release. He asserts that he has a bevy of medical

---

[2] The government does not argue that Horton has failed to exhaust his administrative remedies, (see Doc. 65 at 13), and Horton treats the government's position as an express concession that the exhaustion requirement has been satisfied, (see Doc. 66 at 1). We have no evidentiary indication that Horton has fully exhausted administrative remedies as contemplated by Section 3582(c)(1)(A). See 18 U.S.C. § 3582(c)(1)(A); see also United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); United States v. Petrossi, No. 1:17-CR-192, Doc. 133 at 2 & n.1 (M.D. Pa. Apr. 28, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A) and collecting cases); Petrossi, No. 1:17-CR-192, ___ F. Supp. 3d ___, 2020 WL 1865758, at *3-4 (M.D. Pa. Apr. 14, 2020). We have held that judges cannot waive this statutory exhaustion requirement. See Petrossi, 2020 WL 1865758, at *3-4. And courts are divided on whether the requirement is jurisdictional in nature, such that the government could not waive it either. Compare United States v. Alam, 960 F.3d 831, 833-34 (6th Cir. 2020) (nonjurisdictional); United States v. Johnson, No. 15-CR-125, __ F. Supp. 3d __, 2020 WL 3041923, at *3-4 (D.D.C. May 16, 2020) (same); United States v. Nazer, No. 18-CR-00783-2, __ F. Supp. 3d __, 2020 WL 2197840, at *3-4 (N.D. Ill. May 6, 2020) (same); United States v. Haney, No. 19-CR-541, __ F. Supp. 3d __, 2020 WL 1821988, at *2-3 (S.D.N.Y. Apr. 13, 2020) (same), with United States v. Baye, No. 3:12-CR-00115-RCJ, __ F. Supp. 3d __, 2020 WL 2857500, at *3-5 (D. Nev. June 2, 2020) (jurisdictional requirement); United States v. Johnson, No. CR RDB-14-0441, __ F. Supp. 3d __, 2020 WL 1663360, at *3-4 (D. Md. Apr. 3, 2020) (same). Although not specifically raised by the parties, we have a continuing obligation to consider questions of subject-matter jurisdiction *sua sponte*. See Fort Bend County v. Davis, 587 U.S. __, 139 S. Ct. 1843, 1849 (2019) (citing Gonzalez v. Thaler, 565 U.S. 134, 141 (2012)). However, we need not resolve the issue in this case. Assuming jurisdiction *arguendo*, Horton has not established that a reduction in sentence under Section 3582(c)(1)(A)(i) is warranted. See Jordon v. Attorney Gen., 424 F.3d 320, 325 n.8 (3d Cir. 2005) (citing, *inter alia*, Bowers v. NCAA, 346 F.3d 402, 425 (3d Cir. 2003), and holding that when a jurisdictional limitation "has a statutory provenance," rather than a constitutional one, courts may assume jurisdiction *arguendo*).

ailments which place him at increased risk of serious illness or even death from COVID-19, and he argues that this risk is amplified by the presence of the virus within the facility where he is incarcerated. (See Doc. 55 at 1-2). The government agrees that Horton has made the necessary showing of "extraordinary and compelling reasons" for compassionate release. (Doc. 65 at 13-14).

Congress delegated responsibility for defining "extraordinary and compelling reasons" for compassionate release to the United States Sentencing Commission. See 28 U.S.C. § 994(t). In Application Note 1 to Section 1B1.13 of the United States Sentencing Guidelines, the Commission identifies criteria for determining eligibility for a sentence reduction.[3] See U.S.S.G. § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018). Eligible circumstances include terminal illness as well as "a serious physical or medical condition" or "deteriorating physical or mental health because of the aging process" if the impairment "substantially diminishes" the ability to provide self-care within a correctional facility and is one from which the defendant "is not expected to recover." Id. at cmt. n.1(A)(i), (A)(ii)(I), (A)(ii)(III). A defendant may also be eligible for an age-based reduction if he is 65 or older, is experiencing "serious deterioration in physical or mental health because of the aging process," and has served the lesser of 10 years or 75 percent of his term of imprisonment. Id.

---

[3] We recognize that this policy statement has not been amended since passage of the First Step Act. See United States v. Kelly, No. 3:13-CR-59, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (quoting United States v. Perdigao, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020)). We agree with those courts to observe that Section 1B1.13 still "provides helpful guidance" even if it is no longer controlling. Id. (quoting United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)).

at cmt. n.1(B). The Application Note closes with a catchall, authorizing a reduction when the Director of the BOP identifies in a particular case "an extraordinary or compelling reason other than, or in combination with," the above. Id. at cmt. n.1(D).

The BOP has also developed internal criteria for addressing prisoner requests for compassionate release. Of the many considerations identified in the BOP's policy statement, the only criteria potentially applicable to Horton are those concerning prisoners with a "debilitated medical condition." See FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50: COMPASSIONATE RELEASE/REDUCTION IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C. §§ 3582 AND 4205(G) at 5 (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf. The statement provides that compassionate release should be considered for prisoners "who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover." Id. Specifically, the BOP will consider compassionate release if a prisoner is "[c]ompletely disabled, meaning the [prisoner] cannot carry on any self-care and is totally confined to a bed or chair; or [c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." Id.

Of course, neither the Sentencing Commission nor the BOP contemplated a deadly global pandemic when developing these criteria. Fortunately, the Third Circuit Court of Appeals had an early opportunity to provide guidance to district courts facing an inrush of compassionate release motions. In United States v. Raia, 954 F.3d 594 (3d Cir. 2020), issued on April 2, 2020, the court observed that "the

6

mere existence of COVID-19 in society and the possibility that it may spread to a particular prison . . . cannot independently justify compassionate release, especially considering BOP's statutory role and its extensive and professional efforts to curtail the virus's spread." Raia, 954 F.3d at 597.[4]  Over the past few months, district courts in the pretrial and civil detention contexts likewise have opined that a generalized fear of the virus reaching a given institution is not a proper basis for habeas relief or pretrial release.  See Ndir v. Doll, No. 1:20-CV-705, ___ F. Supp. 3d ___, 2020 WL 2306761, at *5 (M.D. Pa. May 8, 2020) (Conner, C.J.) (collecting cases in civil immigration detainee context); D.M. v. Barr, No. 20-4031, 2020 WL 1969893, at *5 (D.N.J. Apr. 24, 2020) (same); United States v. Anderson, No. 1:19-CR-239, 2020 WL 1953612, at *4, 5 (M.D. Pa. Apr. 23, 2020) (same in pretrial detention context).  In other words, something more is required.

Horton asserts that his various medical conditions and the presence of the COVID-19 virus within FCI Elkton supply the requisite "something more."  Those conditions include type 2 diabetes mellitus, asthma, hypertension, and hyperlipidemia.  (See Doc. 55 at 1; Doc. 58).  He takes several different medications to treat these conditions.  (See Doc. 55 at 1; Doc. 58).  Because of his type 2 diabetes mellitus, Horton is at an "increased risk of severe illness from COVID-19."

---

[4] The Third Circuit in Raia held that motions under Section 3582(c)(1)(A) cannot be brought directly in the court of appeals and that the defendant's failure to exhaust administrative remedies would render remand futile.  See Raia, 954 F.3d at 596-97.  Anything the court said about the merits of the motion, after its threshold jurisdictional determination, is arguably *dicta*.  We are nonetheless persuaded by and agree with the court's observations as to the availability of compassionate release during the COVID-19 pandemic.

*Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated July 30, 2020). His asthma and hypertension also qualify him as someone who "might be at an increased risk for severe illness from COVID-19." (Id.)

The health risk for someone like Horton is particularly acute in a facility that has struggled to keep the COVID-19 virus at bay. FCI Elkton has experienced an outbreak of COVID-19, to which Horton has previously fallen victim—he tested positive for the COVID-19 virus on June 23, 2020, but has since recovered, testing negative three separate times. (See Doc. 68). As of this writing, nine FCI Elkton prisoners have died from COVID-19. See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (select "Full breakdown and additional details") (last updated August 3, 2020, 3:00 p.m.). The BOP's statistics currently reflect 57 positive prisoners and two positive staff members, in addition to the 944 prisoners and 51 staff members that have recovered from the virus. See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (select "Full breakdown and additional details").

Surprisingly, given its position in virtually every other COVID-19 compassionate release case before the undersigned, the government concedes that "Horton has provided an extraordinary and compelling reason" required by Section

8

3582. (Doc. 65 at 13).[5] We are inclined to agree. Horton's various diagnoses qualify as serious medical conditions from which he is not expected to recover and which, given the circumstances at FCI Elkton, substantially diminish his ability to provide requisite self-care. See U.S.S.G. § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018). Thus, Horton has arguably shown "extraordinary and compelling reasons" that would allow the court to grant compassionate release.

**B.     Section 3553(a) Factors**

Our analysis must still be informed by the Section 3553(a) factors,[6] and any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." See 18 U.S.C. § 3582(c)(1)(A); see also United States v. Pawlowski, No. 20-2033, ___ F.3d ___, 2020 WL 4281503, at *2 & n.6 (3d Cir. June 26, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). At sentencing, we carefully balanced the

---

[5] The government also takes the position that "if a defendant has a condition that the CDC has identified as placing an individual at a higher risk of severe outcomes from COVID-19 and if the defendant is not expected to recover from that condition, then he has presented an extraordinary and compelling reason as defined in the guideline policy statement." (Id. at 13-14). Our analysis is confined only to the particular prisoner and facility in this case. We express no opinion regarding the broader implications of the government's sweeping position.

[6] The Section 3553(a) factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner"; (3) "the kinds of sentences available"; (4) the kinds of sentence and sentencing range recommended by the United States Sentencing Guidelines; (5) pertinent policy statements issued by the United States Sentencing Commission; (6) "the need to avoid unwarranted sentencing disparities" among similarly situated defendants; and (7) the need for restitution. 18 U.S.C. § 3553(a).

salient Section 3553(a) factors to impose a sentence that reflected the seriousness of the offense conduct, promoted respect for the law, achieved adequate deterrence, protected the public, and provided appropriate educational, vocational, and rehabilitative treatment to Horton. See 18 U.S.C. § 3553(a)(2). We find that the facts and circumstance of this case—in particular, the nature of Horton's offense conduct; his criminal history and high likelihood of recidivism; and the variance already granted—require that Horton's existing sentence remain intact.

Horton's conduct in this case was serious. He was arrested after police made controlled purchases of cocaine base from Horton and another purchase from one of his associates. (PSR ¶¶ 4-6). After Horton was arrested, investigators executed a search warrant at his residence and recovered, among other things, 42 bags of cocaine base, a box of .380 caliber rounds, a box of sandwich bags, a box of gloves, a digital scale, a grinder, and four bags of heroin. (Id. ¶ 7). All told, Horton was accountable for 38.56 grams of cocaine base. (Id. ¶ 8).

Horton's likelihood of recidivism was—and remains—a principal aggravating factor in our Section 3553(a) calculus. (See Sent. Tr. 8:22-9:11). Horton is 37 years old with a criminal record spanning more than 20 years. He has accumulated separate convictions for burglary (age 14), criminal trespass (age 14), possession of a small amount of marijuana (age 16), possession of drug paraphernalia (age 16), possession with intent to deliver cocaine (age 16), possession with intent to deliver marijuana (age 16), defiant trespass (age 18), possession with intent to deliver cocaine (age 18), possession with intent to deliver cocaine (age 18), possession of drug paraphernalia (age 18), delivery of cocaine (age 18), conspiracy (age 18), felon

10

in possession of a firearm (age 21), carrying a firearm without a license (age 21), possession of a prohibited weapon (age 21), possession of drug paraphernalia (age 21), and various traffic violations (age 21). (See PSR ¶¶ 22-29). Since turning 18 years old, he has been sentenced to a term of imprisonment for drug offenses on four separate occasions. (See id. ¶¶ 26, 27, 28, 29). Unfortunately, it appears that Horton's various sentences have had no deterrent effect. Indeed, he committed the instant offense while on state parole following a guilty plea to firearm and drug charges. (See id. ¶ 31). And this is not the first time that Horton has violated the conditions of his parole. (See id. ¶¶ 26, 27, 28). We thus reject counsel's suggestion that "there is no reason to think that Mr. Horton poses any risk of recidivism," (Doc. 55 at 7), which is squarely refuted by Horton's conduct in this case and others. The existing 140-month sentence was designed to deter Horton from future criminal conduct in a way that other shorter sentences have failed.

A substantial term of imprisonment is also necessary to provide Horton with rehabilitative treatment. Horton has a history of substance abuse. (See PSR ¶ 40). He began consuming alcohol at age 13; from ages 13 to 15 he reports drinking four to five days a week. (Id.) He began smoking marijuana at age 12 and reported smoking "almost daily and multiple times per day" at the time of his arrest. (Id.) At the time of his arrest, he was also using cocaine a couple times per week. (Id.) And he informed the probation officer that for roughly 10 years, from 2001 until 2011, he used ecstacy daily. (Id.) We commend Horton's participation in various rehabilitative programs during his term of imprisonment. (See Doc. 55-3; Doc. 55-4). His participation in these programs is vital to achieving the rehabilitative

goals of sentencing and reducing Horton's likelihood of recidivism.  See 18 U.S.C. § 3553(a)(2)(B), (D).  But releasing him prematurely would seriously undermine these objectives.

Accounting for good time, Horton has nearly 24 months remaining on his 140-month sentence.  See Pawlowski, 2020 WL 4281503, at *2-3 (holding that time remaining on sentence is one factor courts may consider in compassionate-release analysis).  And Horton has already received the benefit of a significant variance.  At sentencing, the court varied downward by 11 months—more than 7% below the bottom end of the Guidelines range and more than 25% below the top end of the Guidelines range—after concluding that a sentence of 140 months would be sufficient but not greater than necessary to achieve each of the above-discussed objectives.

As the above discussion reflects, Horton's existing sentence was carefully crafted after weighing each of the applicable Section 3553(a) factors.  We are not unsympathetic to Horton's concerns—or to any medically vulnerable prisoner's concerns—regarding COVID-19.  But those concerns cannot justify the reduction sought in this case.  For the many reasons articulated at sentencing and reiterated herein, we find that the Section 3553(a) factors strongly militate in favor of leaving Horton's existing sentence intact.

## IV.   Conclusion

The court will deny Horton's motion (Doc. 53) for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    August 4, 2020